# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JENNIFER KRISTIANSEN** and **JOHN HACKER**, | Case No. 3:21-cv-00546-IM (Lead Case) |
| Plaintiffs, | **OPINION AND ORDER** |
| v. | |
| **GABRIEL RUSSELL**, et al., | |
| Defendants. | |
| **NATHAN COHEN**, | Case No. 3:21-cv-00579-IM (Trailing Case) |
| Plaintiff, | |
| v. | |
| **GABRIEL RUSSELL**, et al., | |
| Defendants. | |
| **ANGELINE MEAD**, | Case No. 3:21-cv-00672-IM (Trailing Case) |
| Plaintiff, | |
| v. | |
| **GABRIEL RUSSELL**, et al., | |
| Defendants. | |

PAGE 1 – OPINION AND ORDER

| | |
|---|---|
| **NATHAN HABERMAN-DUCEY**, | Case No. 3:21-cv-00890-IM |
| Plaintiff, | (Trailing Case) |
| v. | |
| **GABRIEL RUSSELL**, et al., | |
| Defendants. | |
| **KRISTEN JESSIE-UYANIK**, and **LILLIAN DOROTHY "BECK" WEST**, | Case No. 3:21-cv-00931-IM (Trailing Case) |
| Plaintiffs, | |
| v. | |
| **GABRIEL RUSSELL**, et al., | |
| Defendants. | |
| **JOE KETCHER**, | Case No. 3:21-cv-00983-IM (Trailing Case) |
| Plaintiff, | |
| v. | |
| **GABRIEL RUSSELL**, et al., | |
| Defendants. | |

Michelle Burrows, Michelle R. Burrows PC, 16869 SW 65th Ave., Ste. 367, Lake Oswego, OR 97035; David D. Park, Elliot & Park, PC, 324 S Abernathy St., Portland, OR 97239; Gabriel Michael Chase, Chase Law PC, 621 SW Alder St., Ste. 600, Portland, OR 97205; Jane L. Moisan, People's Law Project, 818 SW 4th Ave. # 221-3789, Portland, OR 97204; Christopher A. Larsen, Pickett Dummigan McCall LLP, 210 SW Morrison St., Ste. 400, Portland, OR 97204; Joseph E. Piucci, Piucci Law, 900 SW 13th Ave., Ste. 200, Portland, OR 97205; Erious Johnson, Jr., Harmon Johnson LLC, 698 12th St. SE, Ste. 240/No. 4, Salem, OR 97301. Attorneys for Consolidated Plaintiffs.

David G. Cutler, Glenn Greene, and David Inkeles, United States Department of Justice, P.O. Box 7146, Washington, DC 20044. Attorneys for Gabriel Russell, Allen Jones, Russel Burger, Mark Morgan, and Richard Cline. David H. Angeli, Michelle Holman Kerin, and Peter D. Hawkes, Angeli Law Group LLC, 121 SW Morrison St., Ste. 400, Portland, OR 97205. Attorneys for Andrew Smith.

PAGE 2 – OPINION AND ORDER

**IMMERGUT, District Judge.**

On October 1, 2021, this Court consolidated the above-captioned cases to permit the filing of a consolidated motion to dismiss. ECF 21.[1] Defendants Russel Burger, former United States Marshal for the District of Oregon, United States Marshals Service ("USMS"); Gabriel Russell, Regional Director, Region 10, Federal Protective Service ("FPS"); Richard Cline, Principal Deputy Director, FPS; Allen Jones, Deputy Director of Operations, FPS; Mark Morgan, former Acting Commissioner, United States Customs and Border Protection ("CPB"); and Andrew Smith, Assistant Director for Tactical Operations, USMS (collectively, "Defendants") have now moved to dismiss. ECF 30; ECF 31. Defendants seek to dismiss all claims asserted against them pursuant to Federal Rule of Civil Procedure 12(b)(6), on the bases that a *Bivens* remedy is inappropriate in these circumstances, and that even if this Court were to recognize such a remedy, Defendants are entitled to qualified immunity. *See generally* ECF 30.

Plaintiffs in the consolidated cases, Jennifer Kristiansen, John Hacker, Nathan Cohen, Angeline Mead, Nathan Haberman-Ducey, Kristen Jessie-Uyanik, Lillian Dorothy "Beck" West, and Joe Ketcher (collectively, "Plaintiffs"), are individuals who attended one or more protests in support of the Black Lives Matter movement that occurred during July 2020 near the Mark O. Hatfield United States Courthouse in Portland, Oregon. ECF 36 at 14–23. Each Plaintiff suffered physical injuries while protesting, due to alleged excessive force by federal officers. *Id*. at 14–22. Plaintiffs Kristiansen and Hacker also bring allegations of arrest without probable cause. *Id*. at 21–23. Plaintiffs seeks monetary damages from Defendants in their individual capacities under

---

[1] Unless noted otherwise, citations to the docket refer to *Kristiansen v. Russell*, No. 3:21-cv-00546-IM. Although each Plaintiff in the consolidated cases suffered unique injuries and the complaints present unique factual allegations with regard to the Fourth Amendment claims, the allegations against the supervisory Defendants are substantively similar across the complaints and Defendants present the same legal defenses to each complaint. *See* ECF 18 at 2.

*Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), for alleged violations of Plaintiffs' Fourth Amendment rights. *Id.* at 6; *see also, e.g.*, ECF 1 at ¶¶ 99–121.

This Court considers whether certain federal officers—here Defendants Burger, Russell, Cline, Jones, Morgan, and Smith—should be held personally liable under *Bivens* for conduct that occurred during the July 2020 protests in Portland, Oregon. Parties in this case have not asked this Court to opine on the merits of the July 2020 protests or the law enforcement response to those protests, including Operation Diligent Valor, and this Court does not do so here. This Court is also not tasked with determining whether Plaintiffs deserve a remedy in the abstract. Rather, this Court must determine—on the facts presented here and bound by Supreme Court and Ninth Circuit precedent—whether Plaintiffs may seek damages from these supervisory Defendants under *Bivens*. Because this Court finds that Plaintiffs' claims against these Defendants present a new *Bivens* context and special factors counsel hesitation, a *Bivens* remedy is inappropriate and Plaintiffs' claims against these Defendants must be dismissed. Because this Court determines a *Bivens* remedy is inappropriate, this Court declines to address Defendants' arguments regarding qualified immunity.[2]

## STANDARDS

A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court accepts all well-pleaded factual allegations in the complaint as true and construes them in the light most favorable to the non-moving party. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998

---

[2] This Court has determined that oral argument would not aid in the resolution of these issues. *See* LR 7-1(d).

(9th Cir. 2010). However, the court need not credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). To survive a motion to dismiss under Rule 12(b)(6), the plaintiff's complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

"As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks and citation omitted). Rule 12(b)(6) provides that if:

> [M]atters outside the pleading are presented to and not excluded by the court, the motion *shall* be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed. R. Civ. P. 12(b)(6). However, there are two exceptions to this rule. First, a trial court may consider materials submitted as part of the complaint. *Lee*, 250 F.3d at 688. "If the documents are not physically attached to the complaint, they may be considered if the documents' authenticity . . . is not contested and the plaintiff's complaint necessarily relies on them." *Id*. (internal quotation marks and citation omitted). Second, under Federal Rule of Evidence 201, "a court may take judicial notice of matters of public record." *Id*. at 689 (internal quotation marks and citation omitted); *see also* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute.").

## DISCUSSION

### A.  Judicial Notice

This Court first considers Plaintiffs' Motion to Take Judicial Notice. ECF 34. Plaintiffs ask this Court to take judicial notice of "documents" and "exemplars" pursuant to Federal Rule of Evidence 201. *Id*. at 2. Specifically, Plaintiffs request judicial notice of various filings,

declarations, and opinions from following cases: (1) *Index Newspapers v. City of Portland*, No. 3:20-cv-1035-SI (D. Or.); (2) *Clark v. Wolf*, No. 3:20-cv-01436-IM (D. Or.); (3) *Wise v. City of Portland*, No. 3:20-cv-01193-IM (D. Or.); (4) *Pettibone v. Biden*, No. 3:20-cv-01464-YY (D. Or.); and (5) *Western States Center, Inc. v. United States Department of Homeland Security*, No. 3:20-cv-01175-JR (D. Or.). ECF 34 at 2; *see also* ECF 35. Plaintiffs also request judicial notice of: (1) a United States Government Accountability Office ("GAO") report titled *Law Enforcement: Federal Agencies Should Improve Reporting and Review of Less-Lethal Force*; (2) an Office of Inspector General ("OIG") report titled *DHS Lacks Oversight of Component Use of Force*; and (3) an OIG report titled *DHS Had Authority to Deploy Federal Law Enforcement Officers to Protect Federal Facilities in Portland Oregon, but Should Ensure Better Planning and Execution in Future Cross-Component Activities*. ECF 34 at 3; *see also* ECF 35.

Defendants object to the request. ECF 37; ECF 40; ECF 41. Defendants contend that Plaintiffs' "blanket request for judicial notice" fails to provide the information necessary for this Court to determine whether judicial notice is appropriate. ECF 27 at 3–4 (citing *Dauven v. U.S. Bancorp*, 390 F. Supp. 3d 1262, 1270 (D. Or. 2019)). Defendants also argue that Plaintiffs are improperly seeking to rely on the documents for the truth of their contents. ECF 41 at 6–7 (arguing that "Plaintiffs cannot supplement their allegations by attempting to import additional alleged facts under the guise of 'judicial notice'"); ECF 40 at 18–19. Finally, Defendants note that "the Court need not take notice of documents that do not provide any additional relevant information, even if they would otherwise be the proper subject of judicial notice." ECF 40 at 19 (internal quotation marks omitted) (quoting *Bryan v. City of Carlsbad*, 297 F. Supp. 3d 1107, 1115 (S.D. Cal. 2018)).

This Court addresses each category of material in turn. As to the opinions from other proceedings that Plaintiffs ask this Court to notice,[3] on a Rule 12(b)(6) motion, a court may take judicial notice of another court's opinion. *Lee*, 250 F.3d at 690. However, "it may do so not for the truth of the facts recited therein." *Id.* (internal quotation marks and citation omitted); *Wyatt v. Terhune*, 315 F.3d 1108, 1114 (9th Cir. 2003), *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014),  ("[W]e have held that taking judicial notice of findings of fact from another case exceeds the limits of Rule 201."). Rather, the court may take judicial notice of "the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Lee*, 250 F.3d at 690 (internal quotation marks and citation omitted). Accordingly, for purposes of resolving the motions to dismiss, this Court takes judicial notice of the existence of the opinions—which are not binding precedent—in *Index Newspapers* and *Pettibone* referenced in the motion, but not of the findings of fact contained in the opinions. *See* ECF 34 at 2; *see also Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011).

As to the declarations that Plaintiff asks this Court to notice,[4] "[d]eclarations can be used to bring materials that are properly considered to the attention of the court." *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1020 (C.D. Cal. 2015). Defendants argue that such materials cannot be used to introduce facts or evidence at this stage of the proceedings. *See* ECF 40 at 19; ECF 41 at 6–7. This Court agrees with Defendants' assessment that it is inappropriate to notice *for their truth* facts contained in declarations submitted as part of separate litigation.

---

[3] *See Index Newspapers v. City of Portland*, No. 3:20-cv-1035-SI (D. Or.), ECF 157, ECF 191; *Pettibone v. Trump*, No. 3:20-cv-01464-YY (D. Or.), ECF 149.

[4] *See* ECF 35-1, Attachment 1 (Russell declaration filed in *Index Newspapers*); ECF 35-2, Attachment 2 (Jones declaration filed in *Index Newspapers*); ECF 35-3, Attachment 3 (Smith declaration filed in *Index Newspapers*); ECF 35-4, Attachment 4 (Moore declaration filed in *Index Newspapers*).

*See Coal. for a Sustainable Delta v. F.E.M.A.*, 711 F. Supp. 2d 1152, 1172 n.6 (E.D. Cal. 2010)

(explaining that "[a]lthough it is appropriate to take judicial notice of the existence or content of

declarations filed as part of an official court record," relying on the declaration "for the truth of

its contents" is "not a permissible use of a judicially noticed document"); *see also Geanta v.*

*Compass Health, Inc.*, No. CV 13-07416 BRO (JCGx), 2017 WL 11634735, at *3 (C.D. Cal.

July 3, 2017) ("A court may not . . . take judicial notice of the contents of declarations filed in

other cases without an independent basis for doing so."). For the purposes of resolving these

pending motions to dismiss, this Court, therefore, acknowledges the existence of the Russell,

Jones, Smith, and Moore declarations filed in *Index Newspapers*. But Plaintiffs seek to rely on

these declarations for the truth of their contents. *See, e.g.*, ECF 36 at 24–28. This Court does not,

and cannot, notice the facts contained in the declarations for their truth or consider them as

conclusively established when resolving these motions to dismiss. If these facts are not

considered for their truth, their relevance to determining the legal issues presented in these

motions is also diminished. *See Bryan*, 297 F. Supp. 3d at 1115. The same logic applies to the

various other court filings in *Index Newspapers*, *Clark*, *Wise*, *Pettibone*, and *Western States* that

Plaintiffs request this Court notice. *See* ECF 34 at 2. This Court notices the existence of these

filings, but will not consider facts presented therein as conclusively established for the purposes

of resolving the motions to dismiss.

    As to the two OIG reports and GAO report,[5] public records can be appropriate documents

for judicial notice under Rule 201. *See Santa Monica Food Not Bombs v. City of Santa Monica*,

450 F.3d 1022, 1025 (9th Cir. 2006). Nevertheless, Plaintiffs have asked the Court to take

---

[5] *See* ECF 35-5, Attachment 5 (GAO report); ECF 35-6, Attachment 6 (2017 OIG report); ECF 35-7, Attachment 7 (2021 OIG report).

judicial notice of entire reports, not specific facts pulled therefrom, and have not clearly

established the relevance of the reports to resolving the legal issues presented in the motions to

dismiss. *See Elhassani v. U.S. Citizenship & Immigr. Servs.*, No. 33:20-cv-02159-BEN-AHG,

2022 WL 168631, at *18 (S.D. Cal. Jan. 14, 2022) (finding the petitioner's request for judicial

notice "improper" where "it asks the Court to take judicial notice of entire documents rather than

specific facts from the documents or the fact that the documents were published on a specific

date"); *Bryan*, 297 F. Supp. 3d at 1115. Because this Court finds these reports are not relevant to

its disposition of the legal issues presented in the motions to dismiss—*i.e.*, whether a *Bivens*

remedy is appropriate in this context—this Court declines to take judicial notice of them.

Accordingly, Plaintiffs' motion for judicial notice is granted insofar as this Court

acknowledges the existence of some of the requested materials, but this Court declines to notice

these materials for their truth.

## B.  Motions to Dismiss

In *Bivens*, the Supreme Court recognized for the first time an implied right of action

against federal officers for constitutional violations and held that the plaintiff was entitled to sue

federal agents for damages arising out of an unlawful arrest and search, in violation of his Fourth

Amendment rights. *Bivens*, 403 U.S. at 389–90. In the years after *Bivens*, the Court also

recognized implied rights of action under the Constitution for damages in two other contexts. *See*

*Davis v. Passman*, 442 U.S. 228 (1979) (recognizing a damages remedy for a gender

discrimination claim against a United States Congressman under the equal protection component

of the Fifth Amendment Due Process Clause); *Carlson v. Green*, 446 U.S. 14 (1980)

(recognizing a damages remedy against federal prison officials for failure to provide adequate

medical treatment under the Eighth Amendment's Cruel and Unusual Punishment Clause). The

"core purpose" of *Bivens* is "deterring individual officers from engaging in unconstitutional

wrongdoing." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001); *see also Reid v. United States*, 825 F. App'x 442, 444 (9th Cir. 2020) ("A claim for damages based on individualized mistreatment by rank-and-file federal officers is exactly what *Bivens* was meant to address.")

In the four decades since *Bivens*, *Davis*, and *Carlson* were decided, the Supreme Court has repeatedly refused to add to the claims allowed under *Bivens*. *See Hernandez v. Mesa*, 140 S. Ct. 735, 742–43 (2020) (collecting cases). Recently, the Supreme Court made clear that expanding the *Bivens* remedy to any new context or category of defendants "is now a 'disfavored' judicial activity." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) (quoting *Iqbal*, 556 U.S. at 675); *see also Iqbal*, 556 U.S. at 675 (explaining the Court is "reluctant to extend *Bivens*" "[b]ecause implied causes of action are disfavored"). The Court explained that to do so constitutes a "significant step," *Abassi*, 137 S. Ct. at 1856, which risks offending separation-of-powers principles, as "Congress is the best positioned to evaluate 'whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government' based on constitutional torts." *Hernandez*, 140 S. Ct. at 742 (quoting *Abbasi*, 137 S. Ct. at 1856).

In considering possible extensions of *Bivens*, courts engage in a "two-step inquiry," "first inquir[ing] whether the request involves a claim that arises in a new context or involves a new category of defendants," and then, if so, "ask[ing] whether there are any special factors that counsel hesitation" before extending the *Bivens* remedy. *Id.* at 743 (internal citations, alterations, and quotation marks omitted). The "most important question" guiding this analysis is "who should decide whether to provide for a damages remedy, Congress or the courts?" *Id.* at 750 (internal quotation marks omitted) (quoting *Abbasi*, 137 S. Ct. at 1857).

## 1.  New Context Analysis

The Supreme Court's understanding of a "new context" in a *Bivens* analysis is "broad."

*Hernandez*, 140 S. Ct. at 743. A context is "'new' if it is 'different in a meaningful way from

previous *Bivens* cases decided by [the Supreme] Court.'" *Id.* (quoting *Abbasi*, 137 S. Ct. at

1859).

> As the Supreme Court explained in *Abbasi*:

>> Without endeavoring to create an exhaustive list of differences that
>> are meaningful enough to make a given context a new one, some
>> examples might prove instructive. A case might differ in a
>> meaningful way because of the rank of the officers involved; the
>> constitutional right at issue; the generality or specificity of the
>> official action; the extent of judicial guidance as to how an officer
>> should respond to the problem or emergency to be confronted; the
>> statutory or other legal mandate under which the officer was
>> operating; the risk of disruptive intrusion by the Judiciary into the
>> functioning of other branches; or the presence of potential special
>> factors that previous *Bivens* cases did not consider.

*Abbasi*, 137 S. Ct. at 1859–60. The Supreme Court cautions that "even a modest extension is still

an extension," and has "consistently refused to extend *Bivens* to any new context or new

category of defendants." *Id.* at 1857, 1864 (internal quotation marks omitted) (quoting *Malesko*,

534 U.S. at 68); *see also Loumiet v. United States*, 948 F.3d 376, 382 (D.C. Cir. 2020) (noting

that "a new context is present whenever the plaintiff seeks damages from a new category of

defendants" (internal quotation marks and citation omitted)); *Boule v. Egbert*, 998 F.3d 370, 387

(9th Cir. 2021) (finding an extension, albeit "modest," where the defendant "is an agent of the

border patrol rather than of the F.B.I.").

### a.  Vicarious Liability

"[T]he Supreme Court acknowledged that *Bivens* claims cannot proceed on a theory of

*respondeat superior*, but must instead plead that a supervisor, by her 'own individual actions,'

violated the Constitution." *Chavez v. United States*, 683 F.3d 1102, 1109 (9th Cir. 2012) (quoting

*Iqbal*, 556 U.S. at 676); *see also Iqbal*, 556 U.S. at 677 ("Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). "*Bivens* is not designed to hold officers responsible for acts of their subordinates;" its purpose is rather to "deter the *officer*." *Abbasi*, 137 S. Ct. at 1860 (internal quotation marks and citation omitted).

To finds a *Bivens* remedy based only on vicarious liability and the conduct of Defendants' subordinates would extend *Bivens* to a new context and contravene the Supreme Court's directives. *See Pereira Luna v. Thomas*, No. 2:19-CV-00431-JFW (AFM), 2020 WL 473133, at *7 (C.D. Cal. Jan. 28, 2020) (finding "any claims . . . against supervisory officials would also arise in a new context because the Supreme Court has not extended a *Bivens* remedy against any federal official under a theory of respondeat superior"). Moreover, to so extend implicates a different rank of officer—supervisory—and specificity of conduct—vicarious—than were at issue in *Bivens*. *Abbasi*, 137 S. Ct. at 1859–60; *see also Mejia-Mejia v. U.S. Immigr. & Customs Enf't*, No. 18-1445 (PLF), 2019 WL 4707150, at *4 (D.D.C. Sept. 26, 2019) (explaining "the implied causes of action recognized by *Bivens* and its limited progeny have generally been made against individuals . . . who have engaged in some personal misconduct in a direct and particularized interaction with a plaintiff, not against individuals who have applied a general policy that affected plaintiff and others in similar ways"). This Court, therefore, considers whether these *Bivens* claims may proceed under a theory of supervisory liability.

### b. Supervisory Liability

Under *Bivens*, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S at 677. In the Fourth Amendment context, "a supervisor faces liability . . . only where it would be clear to a reasonable [supervisor] that his conduct was unlawful in the situation he confronted." *Chavez v. United States*, 683 F.3d 1102,

1110 (9th Cir. 2012) (internal quotation marks omitted). The Ninth Circuit has also explained

that "[a]n official may be liable as a supervisor only if either (1) he or she was personally

involved in the constitutional deprivation, or (2) a sufficient causal connection exists 'between

the supervisor's wrongful conduct and the constitutional violation.'" *Felarca v. Birgeneau*, 891

F.3d 809, 819–20 (9th Cir. 2018) (quoting *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)).[6]

"The requisite causal connection can be established by setting in motion a series of acts by

others, or by knowingly refusing to terminate a series of acts by others, which the supervisor

knew or reasonably should have known would cause others to inflict a constitutional injury." *Id.*

at 820 (internal quotation marks omitted) (quoting *Starr*, 652 F.3d at 1207–08). Nevertheless, a

supervisor "may not be held liable merely for being present at the scene of a constitutional

violation or for being a member of the same operational unit as a wrongdoer." *Id.*

      Plaintiffs each allege distinct Fourth Amendment violations against one or more unnamed

federal officers for injuries Plaintiffs suffered during the protests in Portland. Plaintiffs'

allegations against Defendants are largely consistent across their complaints. As to Defendant

Russell, Plaintiffs allege that he was the Regional Director of the Department of Homeland

Security ("DHS") FPS Region 10 and commanded the DHS Rapid Deployment Force for

Operation Diligent Valor. ECF 36 at 25. He was "personally responsible for and exercised

tactical direction and control over" the DHS forces in Portland during the relevant time. *Id.* As to

---

      [6] Though *Felarca* and *Starr* are actions under 42 U.S.C. § 1983, the Ninth Circuit has
explained that "[a]lthough 'more limited in some respects,' a *Bivens* action is the federal analog
to an action against state or local officials under § 1983." *Starr*, 652 F.3d at 1206 (quoting
*Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006)); *see also Van Strum v. Lawn*, 940 F.2d 406,
409 (9th Cir. 1991) ("Actions under § 1983 and those under *Bivens* are identical save for the
replacement of a state actor under § 1983 by a federal actor under *Bivens*."). Accordingly, this
Court applies the standard set forth in *Felarca* and *Starr* for supervisor liability to the *Bivens*
context in this case.

Defendant Jones, Plaintiffs allege that he was the Deputy Director for Operations of FPS Region 10 and Deputy Incident Commander of DHS forces in Portland for Operation Diligent Valor. *Id.* at 26. Plaintiffs allege that Defendant Burger was the U.S. Marshal for the District of Oregon and "responsible for an exercised tactical direction and control over all USMS forces" in Portland during the relevant time. *Id.* Plaintiffs allege Defendant Smith was the USMS Assistant Director for the Tactical Operations Division and was "responsible for, and, exercised tactical direction and control over USMS forces" in Portland at the relevant time. *Id.* at 27. As to Defendant Morgan, Plaintiffs allege he was the Acting Commissioner of CBP, and in that capacity "authorized and oversaw the deployment" of CBP forces to Portland for Operation Diligent Valor. *Id.* at 28. Finally, as to Defendant Cline, Plaintiffs allege he was the Deputy Director of FPS and "authorized and oversaw the deployment of FPS forces . . . to Portland, Oregon, as part of Diligent Valor." *Id.*

This Court notes that these allegations may not, for some Defendants, suffice to establish liability under *Felarca* and *Starr*.[7] Nevertheless, even assuming Plaintiffs have alleged Fourth Amendment supervisory liability violations as to each of these Defendants, this Court finds that Plaintiffs seek to extend *Bivens* to a new and different context here.

The Supreme Court has made clear that the new-context inquiry is "broad." *Hernandez*, 140 S. Ct. at 743. "A context [is] 'new' if it is 'different in a meaningful way from previous

---

[7] For instance, Plaintiffs do not include an allegation that Cline was in Portland during the relevant time period. There are no clear allegations that Cline was "personally involved" in any Fourth Amendment violation, or that a "sufficient casual connection exists" between Cline's conduct and any constitutional violations purportedly committed by FPS. *See Felarca*, 891 F.3d at 819–20; *Chavez*, 683 F.3d at 1111 (finding "no factual basis for imputing any such knowledge" of constitutional violations to supervisors "by virtue of [their] responsibilities"); *Iqbal*, 556 U.S. at 676 (requiring a plaintiff to "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

PAGE 14 – OPINION AND ORDER

*Bivens* cases decided by [the Supreme] Court." *Id.* (quoting *Abbasi*, 137 S. Ct. at 1859). The claims against Defendants implicate a new, meaningfully different context.

The most analogous of the Supreme Court's *Bivens* cases is *Bivens* itself, in which the Court implied a remedy for an excessive force claim. "There, the plaintiff alleged that federal narcotics agents violated his Fourth Amendment rights by arresting him, handcuffing him in his home, and searching his home without probable cause or a search warrant." *Quintero Perez v. United States*, 8 F.4th 1095, 1104–05 (9th Cir. 2021) (citing *Bivens*, 403 U.S. at 389–90). That *Bivens* and the instant consolidated cases all invoke the Fourth Amendment is not sufficient to end the new-context inquiry. *Hernandez*, 140 S. Ct. at 743 ("A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized."). In contrast to the facts in *Bivens*, here, the claims arise out of measures taken by multiple federal agencies, pursuant to high-level policy decisions, during weeks of protests in downtown Portland. *See, e.g.*, ECF 1 at ¶¶ 11–14, 20. Plaintiffs in these consolidated cases have not alleged that Defendants directly and personally participated in the conduct. *See, e.g.*, *Chavez*, 683 F.3d at 1111 (finding liability where the defendant "face[d] liability not only as a supervisor, but also for his direct participation in the [vehicle] stops," where the defendant "twice personally stopped" the vehicle). And to the extent Plaintiffs have alleged that Defendants had direct knowledge of the allegedly unconstitutional conduct taken against one of them, the Ninth Circuit has recently found a new context where a defendant directly participated in this conduct but was "an agent of the border patrol rather than of the F.B.I." *Boule*, 998 F.3d at 387.

The alleged constitutional deprivations here involve "intervening steps," which "bear[ ] little resemblance to the straightforward claims from *Bivens*." *Farah v. Weyker*, 926 F.3d 492,

499 (8th Cir. 2019); *see also Schwarz v. Meinberg*, 761 F. App'x 732, 735 (9th Cir.), *cert. denied,* 140 S. Ct. 468 (2019) ("[E]xtending *Bivens* remedies to Schwarz's claims against regional and national BOP officials, individuals who lack direct connection to Schwarz's grievances, undermines the purpose of *Bivens* liability—to deter individual government officers, not their supervisors or the agency, from engaging in unconstitutional conduct."). "[A] modest extension is still an extension," *Abbasi*, 137 S. Ct. at 1864, and this case seeks to extend *Bivens* to a new context.

Plaintiffs urge this Court to adopt the analysis contained in a recent decision from this same District, *Pettibone v. Biden*, No. 3:20-CV-1464-YY, 2021 WL 6112595 (D. Or. Dec. 27, 2021). ECF 36 at 33–34. In that decision, the court, relying heavily on its analysis of *Carlson*, found the plaintiffs stated a Fourth Amendment claim against Russell—who is also a defendant in the instant consolidated cases—and that the plaintiffs' "claims against Defendant Russell do not involve a new context or a new type of defendant for the purposes of *Bivens*." 2021 WL 6112595, at *4, 7. "A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta*, 563 U.S. at 709 n.7 (internal quotation marks and citation omitted). In other words, "district court decisions—unlike those from the courts of appeals—do not necessarily settle constitutional standards." *Id*. Though the Supreme Court appeared to contemplate liability for a supervisory defendant—the chief medical officer—for Eighth Amendment violations in *Carlson*, 446 U.S. at 16 n.1, on this Court's reading, *Carlson* does not require this Court to find *Bivens* liability for these Defendants in these consolidated cases. The factual and legal circumstances presented in *Carlson* are "clearly dissimilar" from those presented in the cases before this Court. *Quintero Perez*, 8 F.4th at 1104 n.4 (declining to consider *Carlson* when

analyzing whether to apply *Bivens* to alleged Fourth Amendment violations). And when *Carlson* was decided, the Supreme Court "followed a different approach to recognizing implied causes of action" described as the "*ancien regime*." *Abbasi*, 137 S. Ct. at 1855 (internal quotation marks omitted) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 287 (2001)). The Supreme Court has since endorsed a "far more cautious course." *Id*. Next, the specificity of the allegations in *Carlson* differs from those in the instant cases. *See Carlson*, 446 U.S. at 16 n.1 (noting officials were "fully apprised of the gross inadequacy" at the prison, "kept [the prisoner] in that facility against the advice of doctors," and "failed to give him competent medical attention"). This Court finds that the context presented in these cases meaningfully differs from that presented in *Carlson*, and declines to adopt the reasoning set forth in *Pettibone*.

## C.  Special Factors Analysis

Having found that Plaintiffs' *Bivens* claims arise in a new context, this Court now "ask[s] whether there are factors that counsel hesitation" in extending *Bivens* to Plaintiffs' claims. *See Hernandez*, 140 S. Ct. at 743. "The [Supreme] Court's precedents now make clear that a *Bivens* remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Abbasi*, 137 S. Ct. at 1857 (quoting *Carlson*, 446 U.S. at 18). The Supreme Court has not defined "special factors counselling hesitation," but has indicated that "the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id*. at 1857–58. "[T]o be a 'special factor counselling hesitation,' a factor must cause a court to hesitate before answering that question in the affirmative." *Id*.; *see also Hernandez*, 140 S. Ct. at 743 ("[I]f we have reason to pause before applying *Bivens* in a new context or to a new class of defendants—we reject the request."); *Arar v. Ashcroft*, 585 F.3d 559,

574 (2d Cir. 2009) (describing the threshold for a factor to counsel hesitation as "remarkably low").

This Court finds that Plaintiffs' claims against Defendants Burger, Cline, Jones, Morgan, Russell, and Smith present special factors counseling against extending *Bivens* to the circumstances present in these cases. First, *Bivens* suits are not the appropriate mechanisms by which to litigate objections to government policies of widespread applicability. *See Abassi*, 137 S. Ct. at 1860; *Malesko*, 534 U.S. at 74 (explaining that a *Bivens* action is not a "proper vehicle for altering an entity's policy"); *see also Clark v. Wolf*, No. 3:20-CV-01436-IM, 2021 WL 2386115, at *5 (D. Or. June 10, 2021); *Clark v. Wolf*, No. 3:20-CV-01436-IM, 2022 WL 326738, at *7 (D. Or. Feb. 3, 2022). Though each Plaintiff in the consolidated cases alleges Fourth Amendment violations tied to injuries personally suffered during protests in Portland, their claims against these supervisory Defendants implicate the implementation of widespread, multi-agency policies during the protests, including by some Defendants who were allegedly not even in Portland for any or the majority of the relevant time period. This Court also finds that extending *Bivens* remedies to claims against individuals who lack a direct and particularized connection to Plaintiffs' injuries would undermine the purpose of *Bivens* liability—"to deter individual federal officers from committing constitutional violations." *Malesko*, 534 U.S. at 70; *Quintero Perez*, 8 F.4th at 1105–06 (dispensing with claim against Border Patrol Chief because "he had no direct involvement in the shooting," and *Bivens* is not the proper vehicle to challenge an agency's policy).[8]

---

[8] The parties disagree whether Plaintiffs have "alterative, existing process[es]" to protect their interests. *Abassi*, 137 S. Ct. at 1858; *see* ECF 30 at 35–37; ECF 36 at 36. "[W]hen alternative methods of relief are available, a *Bivens* remedy usually is not." *Abassi*, 137 S. Ct. at 1863. Though this Court considers the availability—or lack thereof—of an alternative remedy, the lack of an adequate alternative remedy is not dispositive in determining whether a *Bivens*

These considerations counsel caution. This Court is cognizant that the circumstances presented here are serious and that Plaintiffs suffered injuries during the protests. But the considerations presented above suggest to this Court that Congress is the more appropriate body "to consider and weigh the costs and benefits of allowing a damages action to proceed" against these Defendants. *Abassi*, 137 S. Ct. at 1857–58. Where there are "sound reasons to think Congress might doubt the efficacy or necessity of [the] damages remedy" Plaintiffs seek, this Court must refrain from creating one. *Id.* at 1858. Plaintiffs' *Bivens* claims against Defendants must be dismissed. Therefore, the Court declines to reach Defendants' qualified immunity arguments.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Take Judicial Notice, ECF 34, is GRANTED IN PART and DENIED IN PART, and Defendants Burger, Cline, Jones, Morgan, Russell, and Smith's Motions to Dismiss, ECF 30; ECF 31, are GRANTED. Plaintiff's claims against these Defendants are DISMISSED for failure to state a claim.

**IT IS SO ORDERED**.

DATED this 2nd day of June, 2022.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge

---

action to award money damages against the individual officers is appropriate. *See Quintero Perez*, 8 F.4th at 1105 (citing *Schweiker v. Chilicky*, 487 U.S. 412, 421–22 (1988)).